WESLEY G. OUCHI; SBN 297187
    Email: w.ouchi@OuchiLawFirm.com
**THE OUCHI LAW FIRM, A.P.C.**
153 E. Walnut St., Suite A
Pasadena, CA 91103
T: (213) 280-4330
F: (626) 440-9594

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **ANTHONY ROMERO, an Individual,** | **CASE NO.:** |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES** |
| **CITY OF BALDWIN PARK, a Municipal Entity, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, AND DOES 1 through 10, Inclusive**, | **GROUNDS FOR RELIEF** |
| Defendants. | 1. **Excessive Use of Force (42 U.S.C. § 1983)**<br>2. **Municipal and Supervisorial Liability (42 U.S.C. § 1983)** |
| | **DEMAND FOR JURY TRIAL** |

//

//

1
COMPLAINT FOR DAMAGES

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, ANTHONY ROMERO, an Individual, alleging this Complaint for Damages, against Defendants, CITY OF BALDWIN PARK, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and Defendant Officers, DOES 1 through 10, as follows:

## JURISDICTION AND VENUE

1.  The Court has original jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) through (4), as Plaintiff, ANTHONY ROMERO, asserts claims arising under the laws of the United States, including 42 U.S.C. § 1983, along with the Fourth and Fourteenth Amendments to the Constitution of the United States.

2.  This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California, pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the Constitution of the United States.

3.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Defendants, CITY OF BALDWIN PARK, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, all reside in this District, while any and all incidents, events, and occurrences, giving rise to the

2
COMPLAINT FOR DAMAGES

Causes of Action, contained herein this Complaint for Damages, had occurred within this District.

**PARTIES AND RELEVANT ACTORS**

4.  Plaintiff, ANTHONY ROMERO, is an individual residing in the CITY OF HACIENDA HEIGHTS, California.

5.  At all relevant times, Defendant, CITY OF BALDWIN PARK, was a municipal corporation, which exists under the Laws of the State of California, and was the employer of Defendants, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10.

6.  At all relevant times, Defendants, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, were police officers, law enforcement officers, agents, and employees of Defendant, CITY OF BALDWIN PARK, acting within the course and scope of such agency and employment, under "color of state law."  Said Defendants are statutorily liable under California law pursuant to California Government Code sections 820 and 815.2.

7.  On information and belief, at all relevant times, Defendants, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10,

3
COMPLAINT FOR DAMAGES

were residents of the County of Los Angeles, California and are sued in their individual capacities, as defined in the present Complaint for Damages.

8. At all relevant times, Defendants, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, were duly appointed officers, employees, or agents of Defendant, CITY OF BALDWIN PARK, subject to oversight and supervision by the CITY OF BALDWIN PARK's elected and non-elected officials.

9. At this time, the true names and capacities of Defendant Officers, DOES 1 through 10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendant Officers, DOES 1 through 10, by such fictitious names.

10. Plaintiff will seek leave to amend this Complaint to show the true names and capacities of these Defendant Officers, DOES 1 through 10, when they have been ascertained.

### FACTS COMMON TO ALL COUNTS

11. On September 22, 2019, at approximately 2:53 a.m., Plaintiff, ANTHONY ROMERO, was a sixteen (16) year old minor, who was traveling in back seat of a black Chrysler 300 sedan.  (He has since reach the majority age).

12. The front seat was occupied by two other minors.

4
COMPLAINT FOR DAMAGES

13.  The backseat was occupied by another minor, who was seated on the left side of the automobile, and next to Plaintiff.

14.  As the automobile was traveling down Fairgrove Ave, in the City of Baldwin Park, California, it passed two (2) Baldwin Park police cruisers, near the intersection of Frazier Street and Fairgrove Avenue.

15.  The driver of the black Chrysler 300 sedan became scared, since he apparently did not have a driver's license, and began to accelerate.

16.  This caused Officer Ernest Barrios, who was operating one of the police cruisers, to initiate a traffic stop of the black Chrysler 300.

17.  Seeing Officer Barrios initiate a traffic stop caused OFFICER RYAN FELTON, who was operating the other police cruiser, to do the same.

18.  After a few blocks, the black Chrysler 300 stopped on Earl Avenue, just south of Ramon Blvd., in the City of Baldwin Park, California.

19.  At this point, Plaintiff became afraid and exited the backseat of the automobile near the rear alleyway of 13116 Ramona Blvd.

**Excessive Force Incident #1**

20.  OFFICER RYAN FELTON, who observed Plaintiff emerge from the automobile, unholstered his firearm, and aimed it at Plaintiff through the window of his police cruiser.

COMPLAINT FOR DAMAGES

21.  Seeing the Officer draw his fire arm caused Plaintiff to begin running and OFFICER RYAN FELTON exited his police cruiser and began chasing Plaintiff on foot through the alleyway.

22.  During this time, OFFICER RYAN FELTON still had his firearm unholstered and pointed at Plaintiff as he chased him through the alleyway on foot.

23.  Plaintiff heard OFFICER RYAN FELTON's footsteps behind him along with his commands to stop running.  Plaintiff obeyed the Officer's commands.

24.  OFFICER RYAN FELTON then commanded Plaintiff to put his hands in the air and to lay face-first on the ground.  Plaintiff obeyed these commands.

25.  OFFICER RYAN FELTON then commanded Plaintiff to spread his arms and hands on the floor.  Plaintiff obeyed these commands as well.

26.  At this time, Plaintiff was not resisting arrest, was not a physical threat to the Officer, was unarmed, had surrendered his person, and had his arms and hands visible to the Officer.

27.  With his firearm still drawn, OFFICER RYAN FELTON approached Plaintiff and kicked him, with force, in the ribs.  This bruised Plaintiff's ribs and side.  It also terrified Plaintiff who thought he was going to die.

6
COMPLAINT FOR DAMAGES

28. OFFICER RYAN FELTON then proceeded to walk around Plaintiff and kick him square in the face. This gave Plaintiff a black eye. It also bruised the entire side of Plaintiff's face.

29. The incident of excessive force was captured on the surveillance video from a local business and later collected by law enforcement.

**Excessive Force Incident #2**

30. OFFICER RYAN FELTON then detained Plaintiff, in handcuffs, and walked him back to his police cruiser and searched him.

31. OFFICER RYAN FELTON then placed Plaintiff, in the backseat of the police cruiser, while still handcuffed.

32. Another Officer, DOES 1 through 10, arrived and took Plaintiff out of the police cruiser. That Officer began to search Plaintiff as well.

33. OFFICER RYAN FELTON then placed Plaintiff back in backseat of the police cruiser, and without provocation, began to strike Plaintiff, with a closed fist, in the face and body.

34. This violence occurred within the presence of the other Officer, DOES 1 through 10, at the scene. The other Officer did not intervene to prevent this excessive use of force.

7
COMPLAINT FOR DAMAGES

35.  OFFICER RYAN FELTON then began to slam Plaintiff's face against the "grate" of the police cruiser, that separated the front seat from the backseat.

36.  Plaintiff was terrified, began to feel dizzy and confused, and sustained a severe headache from this use of force.

37.  There was no reason for OFFICER RYAN FELTON to apply this level of force on Plaintiff who was cooperating, unarmed, handcuffed, restrained, detained, compliant, and non-threatening.

**Excessive Force Incident #3**

38.  Plaintiff was then transported to the Baldwin Park Police Station for booking and interrogation.

39.  At the Police Station, Plaintiff was brought to a small room, with a few computers, where Officers write their police reports.  At the time, there were two Officers, DOES 1 through 10, already present in the room.

40.  Plaintiff was walked to the end of the room and ordered to sit on the floor facing the wall.

41.  After several minutes had passed, one of the Officers, who was present in the room, began to leave while the other two (2) stayed behind.

8
COMPLAINT FOR DAMAGES

42.  SERGEANT JOSEPH MEISTER and/or DOES 1 through 10 then entered the room and said to Plaintiff, "so you are the little bitch that tried to run away."

43.  SERGEANT JOSEPH MEISTER and/or DOES 1 through 10 then struck Plaintiff in the head, using a closed fist.  This Officer then sat next to the other Officers, DOES 1 through 10, who were still in the room.

44.  SERGEANT JOSEPH MEISTER and/or DOES 1 through 10 then proceeded to continue using derogatory and abusive language towards Plaintiff as he continued to sit on the floor.

45.  No Officer intervened to stop any of this misconduct.

46.  There was no reason to use this level of physical force on Plaintiff who was restrained, detained, cooperative, compliant, non-resisting, non-threatening, and non-violent, and was sitting on the floor facing away from Officers.

**Excessive Force Incident #4**

47.  After several more minutes, Plaintiff began to fall asleep and started resting his head against the wall.  It was very early in the morning at this point.

48.  DOES 1 through 10 and/OR SERGEANT JOSEPH MEISTER then entered the room and told Plaintiff to "wake-up" and to not "be falling asleep in his house."

9
COMPLAINT FOR DAMAGES

49.  DOES 1 through 10 and/or SERGEANT JOSEPH MEISTER then proceeded to strike Plaintiff a few times in the head.  This Officer and/or SERGEANT JOSEPH MEISTER then threatened that, "if I see you fall asleep again, I am going to fuck you up more."

50.  This Officer and/or SERGEANT JOSEPH MEISTER then proceeded to speak to the three (3) Officers already in the room and then left.

**Plaintiff's Mother Arrives at the Jail**

51.  At some point thereafter, Plaintiff's cellphone began to ring.  DOES 1 through 10 then took the cellphone, saw that it was unlocked, and began searching it.  This Officer then kept the cellphone.

52.  Another Officer and/or DOES 1 through 10 then entered the room and began asking Plaintiff about the age of one of his friends, Lisa, who was also in the car.

53.  Plaintiff responded that she was sixteen (16) years old.  This Officer then told Plaintiff that even though she was sixteen years old that "he would still f*ck her."

54.  Meanwhile, OFFICER RYAN FELTON then used Plaintiff's cellphone to call Plaintiff's Mother, ANGELICA ESTRADA.

10
COMPLAINT FOR DAMAGES

55.  OFFICER RYAN FELTON told Plaintiff's Mother that Plaintiff was arrested and being held at the Baldwin Park Police Station and to come get him.

56.  Plaintiff's Mother arrived at the Police Station at around 5:00 a.m. and was walked through the backdoor and into the hallway.

57.  OFFICER RYAN FELTON had Plaintiff's Mother stop at the breakroom where he sat her down at a table.

58.  OFFICER RYAN FELTON explained to Plaintiff's Mother that her son was very lucky since he could have been shot.  He repeats this again and hands her a citation for her son.

59.  OFFICER RYAN FELTON then explained to Plaintiff's Mother that he "had to rough [Plaintiff] up in order to teach him a lesson."

60.  Plaintiff's Mother was confused about what OFFICER RYAN FELTON had just said to her.

61.  Then DOES 1 through 10 walked Plaintiff into the room and she immediately began to cry and tears ran down her face.

62.  Plaintiff had a black eye; had a bruised face; had cuts and abrasions on his arms, wrists, hands, and body; and was covered in the Officers' "shoeprints" from when they were "stomping" on his legs and body.

11
COMPLAINT FOR DAMAGES

63.  At this moment, Plaintiff's Mother was overcome with fear for her and Plaintiff's safety.  She wanted to leave the police station as quickly as possible.

**Plaintiff was taken to the emergency room**

64.  Plaintiff's Mother immediately took him to the Emergency Room at Kaiser Permanente while Plaintiff explained to her everything that had happened that morning.

65.  Plaintiff's Mother also took several pictures of her son's injuries and DOES 1 through 10's "footprints" that covered his pants and body.

66.  At the emergency room, nurses and medical professionals were deeply concerned about Plaintiff's injuries and current state.

67.  As such, the medical professionals immediately reported this to the Baldwin Park Police Station and filed a criminal complaint against OFFICER RYAN FELTON and DOES 1 through 10.

68.  The Baldwin Park Police Station then made a criminal report regarding this incident that the hospital reported.

69.  After leaving the hospital, Plaintiff was brought to his Aunt's house, in Hacienda Heights, California, where he often stays.

12
COMPLAINT FOR DAMAGES

70.  After learning about the incident, Plaintiff's Aunt and his Mother went to the Baldwin Park Police Station to file a complaint against OFFICER RYAN FELTON and DOES 1 through 10.

### Officers are being criminally investigated for this incident
### by Internal Affairs and the District Attorney's Office

71.  A week after the incident, Plaintiff's Aunt and Mother went to a Baldwin Park City Council Meeting and spoke about the Officers' misconduct.

72.  After the meeting, a Detective from the Baldwin Park Police Station approached Plaintiff's Aunt and Mother and handed them his card.

73.  This Detective told them that there was a video of the incident(s) and that there were several inconsistencies with OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and the DOES 1 through 10's statements.

74.  This Detective further assured them that they were not going to ignore the incident and that they were going to do a thorough investigation.

75.  A few weeks or months later, Detectives from either the Los Angeles County Sherriff's Department and/or Baldwin Park Police Department met Plaintiff's family at his Aunt's house in Hacienda Heights, California.

76.  They returned Plaintiff's cellphone and further assured them that they were investigating the incident of Officer misconduct.

77.  Eventually, the matter was referred to the Los Angeles County District Attorney's Office for the filing of criminal charges against OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and/or the DOES 1 through 10.

**Plaintiff's Injuries**

78.  This incident has caused physical, emotional, and psychological injuries to Plaintiff.

79.  Plaintiff has symptoms and/or disorders of trauma, anxiety, depression, sleeping problems, nightmares, and other affective problems.

80.  Plaintiff has scaring on his wrists and hands from when the Officers had restrained him and were assaulting him.

81.  Plaintiff's entire personality has changed as he is quieter; more reserved; less social; never comes out of his room; and quit doing activities he used to enjoy.

82.  After the incident, Plaintiff had a black eye; bruised face; abrasions on his arms, hands, wrists, body, and head; and symptoms of trauma, depression, anxiety, sleep disorders, and personality changes.

83.  Ultimately, Plaintiff has suffered general, special, economic, and non-economic damages as a result of this incident, which he will be seeking at the time of trial, along with punitive damages against the Officers.

//

14
COMPLAINT FOR DAMAGES

# COUNT 1

## Excessive Force in Violation of 42 U.S.C. § 1983 and Fourth Amendment to the Constitution of the United States

### [Alleged Against Defendant, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10]

84.  Plaintiff, ANTHONY ROMERO, repeats and re-alleges each and every allegation, in Paragraphs 1 through 83 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

85.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, were acting, "under color of state law," as uniformed, on-duty, armed police officers, employed by Defendant, CITY OF BALDWIN PARK, on the date and time that they investigated, encountered, detained, arrested, assaulted, injured, and violated Plaintiff, thereby depriving him of his Fourth Amendment Rights.

86.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 intentionally "seized" Plaintiff, when they initiated a "stop," detention, and/or arrest of his person, thereby preventing Plaintiff, or any reasonable person under the same circumstances, from physically leaving, walking away, ignoring the Officers' presence, or believing that they were free to do any of

15
COMPLAINT FOR DAMAGES

the foregoing actions.  This was further demonstrated by pointing a loaded firearm at Plaintiff as he emerged from the automobile; placing restraints on his person; placing him in the backseat of a police cruiser; and taking him to the Police Station and detaining him in the report writing room where he was forced to sit on the ground facing the wall while armed Officers surrounded and abused him.

87.  This seizure of Plaintiff was intentional since OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 pointed a loaded firearm at him, verbally and physically commanded Plaintiff to "stop," and immediately detained and handcuffed him to the extent that any reasonable person, under the circumstances, would not have felt "free to leave" or "walk away," especially in light of the aggressive, uniformed, armed Officers who were present at the scene, who were present while placing him the police cruiser, and who were present while detaining him at the police station.

88.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 proceeded to use physical force when they pointed a loaded firearm at Plaintiff as he emerged from the automobile; when they kicked him in the side, face, and eye; when they struck him in the face, head, body; when they slammed him into the grate of the police cruiser; when they were stomping on him

16
COMPLAINT FOR DAMAGES

while in their custody; and when they struck him several times in the head at the police station.

89.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 used their authority as uniformed, armed police officers to prevent Plaintiff's freedom of movement, while Plaintiff laid face-first on the ground with his arms and hands spread over his head; when they restrained his arms and wrists behind his back; when they placed him in the back seat of the police cruiser and slammed him face first into the metal grate of the police cruiser while striking him with closed fists; and when they struck him several times in the head at the police station on multiple occasions as he was sitting on the floor facing the wall.

90.  The seizure of Plaintiff's person was unreasonable, under the Fourth Amendment, since OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 proceeded to use excessive force when they pointed a loaded firearm at him, as he emerged from the automobile, and repeatedly, feloniously, violently, and unreasonably struck a restrained, non-resistant, compliant, non-threatening, non-dangerous, responsive, unarmed, and cooperative Plaintiff in the face, head, and body, as OFFICER RYAN FELTON, SERGEANT

17
COMPLAINT FOR DAMAGES

JOSEPH MEISTER, and DOES 1 through 10 made their arrest, or were allegedly defending themselves, and/or attempting to prevent Plaintiff from fleeing.

91.  The force that was applied on Plaintiff was excessive since it was not objectively reasonable under all of the circumstances.  As Plaintiff emerged from the automobile, there was no reason to point a loaded firearm at his person nor chase him with said weapon down an alleyway.  At the scene Plaintiff had surrendered himself, was cooperative, non-threatening, unarmed, and lying face-first against the pavement with this hands and arms above his head; was restrained, non-resistant, non-threatening, and cooperative when placing him in the backseat of the police cruiser; and was restrained, non-resistant, non-threatening, and cooperative while at the police station.  There was no reason to use any force against him at any point during their arrest, detention, and holding.

92.  Plaintiff did not pose an immediate threat to the safety of OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 or other persons at the time he emerged from the automobile; when he had surrendered himself to Officers at the scene; when he had been handcuffed and placed in the backseat of the police cruiser; and when he was restrained and sitting on the floor facing the wall of the police station while surrounded by several armed

police officers.  At no point, during any of these situations, was Plaintiff an immediate threat to the safety or any of the Officers of other persons.

93.  At the time OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 applied force on Plaintiff, he was not actively resisting arrest or attempting to evade arrest by flight.  As previously mentioned, Plaintiff had surrendered himself to Officers at the scene; was lying face first on the pavement with his hands and arms above his head; was restrained in the backseat of the police cruiser; and was restrained while sitting on the floor of the police station surrounded by several armed police officers.  At no point, when force was applied to Plaintiff, was he resisting arrest or attempting to flee.

94.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 had a tremendous amount of time to determine the type and amount of force that reasonably appeared necessary while detaining Plaintiff. There were no changing circumstances during their detention that may have warranted any use of force against Plaintiff who had surrendered himself; was restrained at the scene and police station; was cooperative and non-resisting; was not attempting to fight Officers or flee the scene; and was not a threat to anyone's safety.

95.  The type and amount of forced used by OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 was unreasonable under the circumstances.  There was no reason to point a loaded firearm at Plaintiff when he emerged from the automobile or to kick Plaintiff in the face, eye, and side of the body while he was laying on the ground surrendering to Officers.  There was no reason to strike Plaintiff or slam his face into the metal grate while he was restrained and cooperating in the backseat of the police cruiser.  There was no reason to strike Plaintiff several times in the head at the police station while he was sitting on the floor restrained facing the wall.

96.  There were several available alternative methods to take Plaintiff into custody and/or to subdue him, that did not require the use of any force, since he was cooperative, non-resisting, compliant, and had surrendered.  Plaintiff was on the floor lying face first on the pavement with his hands above his head.  Plaintiff was restrained, cooperating, and placed in the backseat of the police cruiser.  There was also no reason to use any force against him while he was restrained at the police station sitting on the floor facing the wall, especially when he began to fall asleep.  No force was necessary in detaining Plaintiff.

97.  It was obvious that Plaintiff was not emotionally disturbed nor was he displaying any type of psychotic behavior.  Plaintiff's behavior in surrendering

20
COMPLAINT FOR DAMAGES

himself, following commands, cooperating with the detention, and behaving at the police station demonstrate that there were no circumstances that indicated Plaintiff may have been emotionally disturbed or displaying psychotic behavior.  Plaintiff was cooperative, non-resisting, compliant, non-threatening, unarmed, non-threatening, and restrained.

98.  Due to the degree of force applied on Plaintiff, under the circumstances, the actions of OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, were the cause-in-fact of Plaintiff's injuries that he sustained. He would not have sustained his injuries had it not been for the amount of force used by these Officers during the arrest.

99.  Furthermore, due to the degree of force applied on Plaintiff, under the circumstances, it was foreseeable that the actions of OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10, were the proximate cause of Plaintiff's injuries that he sustained.  These injuries were the foreseeable consequence of using this amount of force on Plaintiff.

100.  Additionally, the conduct of OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 were a substantial factor in causing Plaintiff's injuries, which would not have occurred had it not been for the amount of force that was applied on his person.

COMPLAINT FOR DAMAGES

101.  As a result, Plaintiff experienced emotional and psychological distress, pain and suffering, physical injuries, humiliation and embarrassment, fears for this health and wellbeing, general and special damages, and economic and non-economic damages, in an amount to be proven at trial.

102.  Plaintiff alleges that OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 had acted with a willful, wanton, malicious, and reckless disregard for his rights, safety, and wellbeing, thereby warranting the imposition of exemplary and punitive damages.

103.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 acted with ill will, spite, and with the purpose of injuring Plaintiff, and acted with complete indifference to his safety and rights, as an absolute misuse and abuse of their authority and power, thereby taking advantage of Plaintiff's vulnerability, weakness, compliance, and helplessness, while he laid face-first on the pavement with his hands and arms above his head as OFFICER RYAN FELTON kicked him in the side and face; while he was restrained at the scene and placed in the backseat of the police cruiser while OFFICER RYAN FELTON struck Plaintiff several times and slammed his face into the metal grate while the other Officers watched; and while Plaintiff sat restrained on the floor of the police station facing the wall as Officers struck him several times in the head

22
COMPLAINT FOR DAMAGES

and used derogatory language towards him.  There was no reason to use this amount of force on this Minor during the detention, since he was cooperative, unarmed, restrained, surrendered, compliant, non-violent, and non-threatening. There was also no reason to point a loaded firearm at Plaintiff as he emerged from the automobile or began to run down the alleyway.

104.  Plaintiff further claims attorney fees and legal costs pursuant to 42 U.S.C. § 1988, under this claim of relief.

## COUNT 2

## Supervisorial and Municipal Liability in Violation of 42 U.S.C. § 1983

## [Alleged Against Defendant, City of Baldwin Park]

105.  Plaintiff, ANTHONY ROMERO, repeats and re-alleges each and every allegation, in Paragraphs 1 through 104 of this Complaint for Damages, with the same force and effect as if fully set forth and stated herein.

106.  Plaintiff alleges that the express policies and/or widespread and/or longstanding customs and practices of Defendant, CITY OF BALDWIN PARK, actually and proximately caused Plaintiff's damages, including but not limited to, the deprivation of his Fourth Amendment Rights, when OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER and DOES 1 through 10 applied excessive and objectively unreasonable force upon his person, for which

23
COMPLAINT FOR DAMAGES

Defendant, CITY OF BALDWIN PARK, is directly liable.

107.  As previously alleged, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 were uniformed, armed police officers, who were acting under the "color of state law," as employees of Defendant, CITY OF BALDWIN PARK, who intentionally seized Plaintiff, by using physical force, and kicked him in the face and side of the body while he was laying on the floor face-first with his hands and arms above his head; when they repeatedly struck him and slammed him into the metal grate while they were placing him in the backseat of the police cruiser; and while at the police station when they struck him several times in the head as he was sitting on the floor, restrained, and facing the wall.

108.  When OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 applied excessive force against Plaintiff, they either acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of Defendant, CITY OF BALDWIN PARK, or were the product of the foregoing, which encouraged, supported, tolerated, condoned, protected, and promoted officer misconduct, excessive use of force or brutality, objectively unreasonable seizures, and violent and aggressive police tactics.

24
COMPLAINT FOR DAMAGES

109.  Specifically, Defendant, CITY OF BALDWIN PARK, maintains official policies and/or widespread and/or longstanding practices or customs of:

a)  creating false records and narratives regarding use of force incidents whereby Officers allege that the suspect was attacking, threatening, resisting, obstructing, or assaulting them to the extent that they were required to use this level of physical force against them;

b)  using physical force on suspects who were shielding, protecting, or defending themselves and then falsely, dishonestly, and unreasonably claiming that they were "resisting" arrest or that they were "afraid for their safety" thereby justifying their continued use of physical force on them;

c)  initiating investigatory detentions and stops based on a person's perceived race, ethnicity, clothing, and neighborhood or a "hunch" by the officer(s) that this person could be committing a crime, while applying use of force on such persons to a higher degree than others;

d)  failing to create a "paper trail" of Officer misconduct by systemically rejecting citizen complaints at the early stages of an internal affairs or department investigation;

e)   failing to adequately investigate incidents where Officers have been accused of misconduct and violating civil rights of persons within the community;

f)   assigning problem officers or employees who "work in gray" to reject the claims of officer misconduct during the initial stages of an internal affairs or department investigation;

g)   assigning officers who are the subject of internal affairs investigations to the Department of Internal Affair while the investigation is pending;

h)   reassigning officers to administrative duties or allowing them take "time off" in order to avoid any suspensions or discipline on their records;

i)   maintaining vague, ambiguous, and biased records that do not properly, adequately, or accurately apprise others of the officers' past misconduct;

j)   failing to internally investigate any cases that are pending litigation which usually relate to the most serious forms of officer misconduct;

k)   failing to internally investigate claims that have not been internally filed but were externally reported or known by the Department;

26
COMPLAINT FOR DAMAGES

l) hiding behind settlements, general releases, and "no fault admissions" related to lawsuits or government claims;

m) transferring, relocating, and/or promoting Officers or allowing them to resign prior any internal investigation completing or taking place;

n) failing to adequately flag problem officers within the department;

o) failing to adequately retrain problem officers within the department;

p) failing to properly discipline, suspend, or terminate problem officers within the department.

q) transferring, moving, and/or relocating its problem Officers to various departments, stations, divisions, and positions in order to essentially "bury," ignore, dilute, hide, and spread these problem Officers, along with their incidents of misconduct, to other LAPD Branch Stations, and to evade internal, disciplinary, and other investigations.

r) allowing its Officers to participate in "renegade," "gang-like," cliques, which facilitate, conspire, promote, organize, encourage, and commit acts of police brutality, aggressive police tactics, and officer misconduct.

27
COMPLAINT FOR DAMAGES

s) allowing acts of excessive force to be committed against suspects, inmates, or defendants, in order for an Officer to gain membership into one of these renegade gang-like cliques;

t) allowing Officers to formalize their membership into these renegade cliques with a "tattoo" that signifies that this particular Officer has "earned his ink;"

u) allowing Officers to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence," or "blue code," regarding these unconstitutional abuses in order to protect members, recruit younger deputies, and earn promotions;

v) allowing these secret societies of tattooed deputies in the East Los Angeles area to continue operating despite the FBI investigating these renegade cliques.

110.  These policies, customs, and practices further allows Defendant, CITY OF BALDWIN PARK, to continue employing problem Officers within the CITY OF BALDWIN PARK, or to move them to other Cities and Counties, without leaving a "paper trail" of Officer misconduct.

111.  Defendant, CITY OF BALDWIN PARK, along with its Police Chiefs and Police Department(s), which ratify, adopt, condone, comply, and follow these

28
COMPLAINT FOR DAMAGES

policies, customs, and practices, further maintain mutual, unspoken agreements and reciprocity with other municipalities to accept their problem Officers as well.

112.  OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, AND DOES 1 through 10 were involved in several previous incidents involving excessive force and subsequent lawsuits.  However, pursuant to the foregoing policies, customs, and practices, OFFICER RYAN FELTON, SERGEANT JOSEPH MEISTER, and DOES 1 through 10 were allowed to remain employed, untrained, unsupervised, undisciplined, and uninvestigated by Defendant, CITY OF BALDWIN PARK, which caused the injuries that Plaintiff had sustained.

113.  Defendant, CITY OF BALDWIN PARK, failed to supervise these problem Officers with a history of excessive force and misconduct which caused the injuries to Plaintiff, who was another victim of these Officers' excessive use of force that was unsupervised, unmonitored, and unaddressed by the CITY OF BALDWIN PARK.

114.  As such, these expressly adopted official policies or widespread, longstanding practices or customs constitute a standard operating procedure of Defendant, CITY OF BALDWIN PARK, which has resulted in repeated incidents of officer involved shootings and excessive force, against members of the general public, inmates, suspects, and defendants.

115.  Ultimately, these official policies and/or widespread, longstanding practices or customs of Defendant, CITY OF BALDWIN PARK, are so closely related to the deprivation of Plaintiff's Fourth Amendment Rights, that they were the moving force that caused his injuries.  Plaintiff would not have sustained his injuries had Defendant, CITY OF BALDWIN PARK, maintained constitutional practices and safeguards to prevent the continuous acts of excessive force, by its officers, in violation of the Fourth and Fourteenth Amendments.

116.  As a result, Plaintiff experienced emotional and psychological distress, pain and suffering, physical injuries, humiliation and embarrassment, fears for this health, wellbeing, and safety, general damages, and special damages in an amount to be proven at trial.

117.  Plaintiff further claims attorney fees and legal costs pursuant to 42 U.S.C. § 1988, under this claim of relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANTHONY ROMERO, respectfully requests entry of judgement, in his favor, against Defendants as follows:

a)  For general damages in an amount to be proven at trial;

b)  For special damages in an amount to be proven at trial;

c)  For punitive damages in an amount to be proven at trial;

COMPLAINT FOR DAMAGES

d)  For interests at the time of trial;

e)  For an award of reasonable attorney fees and costs as to Plaintiff's

federal civil rights claims pursuant to 42 U.S.C. § 1988.

f)  For an award of litigation costs and expenses;

g)  For any other equitable and legal relief that the Court deems just,

proper, and appropriate.

Respectfully submitted,

Date: 07/08/21          THE OUCHI LAW FIRM, A.P.C.

*Wesley G. Ouchi /s/*
**WESLEY G. OUCHI**
Attorney for Plaintiff,
ANTHONY ROMERO

31
COMPLAINT FOR DAMAGES

# DEMAND FOR JURY TRIAL

Plaintiff, ANTHONY ROMERO, hereby respectfully demands a trial by jury in this matter.

Respectfully submitted,

Date:  08/04/21                      THE OUCHI LAW FIRM, A.P.C.

*Wesley G. Ouchi /s/*
**WESLEY G. OUCHI**
Attorney for Plaintiff,
ANTHONY ROMERO

32
COMPLAINT FOR DAMAGES